UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | Case Nos.: 2:12-cv-00536-GMN-VCF |
| | ) | 2:18-cv-01813-GMN-DJA |
| Plaintiff, | ) | 2:18-cv-02281-GMN-VCF |
| vs. | ) | 2:17-cv-02966-GMN-NJK |
| | ) | 2:17-cv-02967-GMN-BNW |
| AMG SERVICES, INC., *et al.*, | ) | 2:17-cv-02968-GMN-NJK |
| | ) | |
| Defendants. | ) | **ORDER**[1] |
| | ) | |

Pending before the Court is the Motion to Assert Interest, (ECF No. 1345), filed by Defendants Kim Tucker[2] and Black Creek Capital Corporation, along with Monitor Entities[3] NM Service Corporation, BA Services, LLC, and Westfund, LLC (collectively, "Movants").[4]

---

[1] This Order addresses the Motion to Assert Interest, (ECF No. 1345), filed in Case No. 2:12-cv-00536-GMN-VCF. However, this Order will also be filed in the Ongoing Litigation cases, (Case Nos. 2:18-cv-01813-GMN-DJA, 2:18-cv-02281-GMN-VCF, 2:17-cv-02966-GMN-NJK, 2:17-cv-02967-GMN-BNW, 2:17-cv-02968-GMN-NJK), because the Order has implications for those cases as well.

[2] Kim Tucker is Defendant Scott Tucker's ex-wife.

[3] The Monitor Order defines "Monitor Entities" as: (a) the corporate defendants and corporate relief defendant: AMG Capital Management, LLC, Level 5 Motorsports, LLC, Black Creek Capital Corporation, Broadmoor Capital Partners, LLC, Park 269, LLC; and their successors, assigns, affiliates, and subsidiaries; (b) BA Services LLC, C5 Capital LLC, DF Services Corp., DFTW Consolidated [UC] LLC, Impact BP LLC, Level 5 Apparel LLC, Level 5 Capital Partners LLC, Level 5 Eyewear LLC, Level 5 Scientific LLC, NM Service Corp. (f/k/a/ National Money Service), PSB Services LLC, Real Estate Capital LLC (f/k/a/ Rehab Capital I, LLC), Sentient Technologies, ST Capital LLC, Westfund LLC, Eclipse Renewables Holdings LLC, Scott Tucker Declaration of Trust, dated February 20, 2015, West Race Cars, LLC, and Level 5 Management LLC, and their successors, assigns, affiliates, and subsidiaries; and (c) any other entity identified by the Monitor that, upon motion granted by the Court, is found to be a proper Monitor Entity because, for example, such entity holds Assets of a Defendant or existing Monitor Entity, or is owned or controlled by a Defendant or Monitor Entity. (Monitor Order 3:17–4:6, ECF No. 1099).

[4] Movants Motion attempts to assert an interest in five other cases (the "Ongoing Litigation") currently pending before this Court. (*See infra* n.3). As such, Movants also filed Notices of the present Motion in each of the five cases. (*See* Notice, *McNamara v. Charles Hallinan, et al.*, No. 2:17-cv-02966-GMN-NJK, ECF No. 170); (Notice, *McNamara v. Linda Hallinan, et al.*, No. 2:17-cv-02967-GMN-BNW, ECF No. 170); (Notice, *McNamara v. Patten, et al.*, No. 2:17-cv-02968-GMN-NJK, ECF No. 117); (Notice, *McNamara v. Stealth*

The Motion asserts that Movants, and specifically Kim Tucker, are the proper parties to prosecute the Ongoing Litigation[5] and to pursue the collection of the Outstanding Judgments.[6] For the reasons discussed below, the Court **DENIES** Movants Motion to Assert Interest.

I. **BACKGROUND**

This action was brought by the Federal Trade Commission ("FTC"), asserting that the "high-fee, short-term payday loans" offered by former Defendants AMG Services, Inc., SFS, Inc., Red Cedar Services, Inc., and MNE Services, Inc. violated section 5 of the Federal Trade Commission Act of 1914, 15 § U.S.C. 45(a)(1), the Truth in Lending Act of 1968, 15 U.S.C. §

---

*Power, LLC*, No. 2:18-cv-01813-GMN-DJA, ECF No. 80); (Notice, *McNamara v. Intercept Corp., et al.*, No. 2:18-cv-02281-GMN-VCF, ECF No. 75).  There have been numerous responses and replies from various parties to the Motion and the Notices.  The Court declines to list them all here.

[5] "Ongoing Litigation" refers to the ongoing matters brought by Court-appointed Monitor Thomas McNamara, pursuant to the authority granted to him in the Monitor Order, (ECF No. 1099), to recover debts owed to Scott Tucker and the Monitor Entities and clawback fraudulent transfers and ill-gotten gains.  There are currently five pieces of Outstanding Litigation: (1) *McNamara v. Charles Hallinan, et al.*, No. 2:17-cv-02966-GMN-NJK (D. Nev.); (2) *McNamara v. Linda Hallinan, et al.*, No. 2:17-cv-02967-GMN-BNW (D. Nev.); (3) *McNamara v. Patten, et al.*, No. 2:17-cv-02968-GMN-NJK (D. Nev.); (4) *McNamara v. Stealth Power, LLC*, No. 2:18-cv-01813-GMN-DJA (D. Nev.); and (5) *McNamara v. Intercept Corp., et al.*, No. 2:18-cv-02281-GMN-VCF (D. Nev.).  In this Court's Second Amended Order, (ECF No. 1338), "Ongoing Litigation" additionally included *McNamara v. Selling Source, LLC et. al.*, No. 2:17-cv-02969-GMN-DJA (D. Nev.), but the Monitor has since voluntarily dismissed that case.  Accordingly, for the purposes of this Order "Ongoing Litigation" refers only to the five open cases.

[6] "Outstanding Judgments" refer to four judgments obtained by Court-Appointed Monitor Thomas McNamara pursuant to the authority granted to him by the Monitor Order, (ECF No. 1099), that have not yet been fulfilled.  The Outstanding Judgments include: (1) a judgment from this case, (ECF No. 1291), in the amount of $2,416,666.36 against David Feingold, Dylan, Jagger Investment Co., Inc., Homeowners Realty, LLC, UMR Building LLC, and United Material Recovery, LLC, (collectively, "Feingold Parties") (*see* ECF Nos. 1290, 1291); (2) a judgment out of this Court, (Case No. 2:18-cv-01336-JCM-CWH), on behalf of Black Creek Capital Corporation, in the amount of $2,000,000 plus post-judgment interest against WhamTech, Inc.; (3) a judgment out of the District Court of Johnson County, Kansas, (Case No. 18-cv-0335), on behalf of Westfund, LLC, in the amount of $952,104.47 plus prejudgment interest of $627,860.00 through July 1, 2019, and interest accruing since at $528.95 per day against United Resource Holdings, LLC, Kendallwood Senior Properties, LLC, John T. Julian, Linda L. Julian, and Paul K. Thoma; and (4) a judgment out of the District Court of Johnson County, Kansas, (Case No. 18-cv-0335), on behalf of Westfund, LLC, in the amount of $516,928.33 plus prejudgment interest of $340,885.52 through July 1, 2019, and interest accruing since at $287.18 per day against United Resource Holdings, LLC, Milan Development Group, LLC, John T. Julian, and Paul K. Thoma. (*See* Monitor's Statement 3:1–23, ECF No. 1333).

1601(a), and Regulation Z, 12 C.F.R. § 1026(a). (Am. Compl. 15:1–20:6, ECF No. 386). Defendant Scott Tucker controlled, founded, or was president of a host of short-term payday loan marketing and servicing companies, including, inter alia, National Money Service, Inc., CLK Management LLC, and Universal Management Services, Inc. (Exs. 1–2, 4–5, 14 to Singhvi Decl., ECF Nos. 908-1–2, 4–5, 14).

On September 20, 2019, the Court granted summary judgement in favor of the FTC, awarding both injunctive and monetary equitable relief based on the long-held Ninth Circuit precedent that Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), permits a panoply of equitable remedies, including monetary equitable relief in the form of restitution and disgorgement. *See Pantron I Corp.*, 33 F.3d at 1103 n.34; *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 606–08 (9th Cir. 1993); *H.N. Singer*, 668 F.2d at 1113; (Order 19:22–26:4, ECF No. 1057).  Defendants appealed the FTC's monetary equitable relief award. (Notice of Appeal, ECF No. 1097).

While the Ninth Circuit affirmed this Court's Order, the Supreme Court reversed, holding that "[section] 13(b) as currently written does not grant the [FTC] authority to obtain equitable monetary relief." *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341, 1352 (2021); *FTC v. AMG Captial Management, LLC*, 910 F.3d 417, 426–27 (9th Cir. 2018); *FTC v. AMG Services, Inc.*, No. 2:12-cv-00536-GMN-VCF, 2016 WL 5791416, at *11–13 (D. Nev. Sept. 30, 2016); (Order, ECF No. 1057).  The Ninth Circuit subsequently vacated its affirmation of the FTC's monetary award, reversing this Court's Order and remanding for further proceedings consistent with the Supreme Court's opinion. *See FTC v. AMG Capital Management, LLC*, 998 F.3d 897, 897–98 (9th Cir. 2021).  On remand, the Court amended its original Order to deny the FTC's request for equitable monetary relief. (Second Am. Order 22:18–20, ECF No. 1338).

During the pendency of Defendants' appeal the parties jointly moved to (1) stay the FTC's collection of the monetary relief award; (2) freeze Defendants' assets; and (3) appoint a monitor, Thomas W. McNamara ("the Monitor"), to "oversee the asset freeze and the orderly sale of certain assets the Tucker Defendants[7] have agreed to liquidate while the appeal is pending." (*See* Order Appointing Monitor ("Monitor Order") 1:14–15, ECF No. 1099). The Monitor's purpose was to "preserve the status quo during the pendency of the appeal, and to facilitate the liquidation of assets that absent such liquidation would waste in value during the pendency of the appeal." (*Id.* 2:6–8). Additionally, the Monitor initiated numerous lawsuits and settlement negotiations to recover debts owed to Scott Tucker and the Monitor Entities and clawback fraudulent transfers or ill-gotten gains. (Monitor's Final Report 9:9–13, ECF No. 1364). As a result of the Monitor's efforts, the Monitorship Estate currently holds $14,452,645.57 in net cash. (*See* Final Status Report 20:10–12, ECF No. 1364).

The parties agree that the Monitor's authority to act on behalf of the Monitorship Estate ended with the conclusion of the appeal. Accordingly, the Court's Second Amended Order provided instructions for the orderly wind-down of the Monitorship Estate. Most of the assets in the Monitorship Estate, including the net cash, are subject to a Preliminary Order of Forfeiture ("POOF") in the District Court for the Southern District of New York ("SDNY") in relation to Scott Tucker's criminal money judgment of $3.5 billion. However, some Monitorship assets, including the Ongoing Litigation and the Outstanding Judgments at issue here, are not covered by SDNY's POOF. (*See supra* n.3–4). To affect the wind-down of these assets, the Court ordered:

---

[7] The Monitor Order defines "Tucker Defendants" as: Scott A. Tucker, AMG Capital Management, LLC, Level 5 Motorsports, LLC, Black Creek Capital Corporation, Broadmoor Capital Partners, LLC, and their successors, entities, assigns, affiliates, and subsidiaries. (Order Appointing Monitor ("Monitor Order") 4:20–22, ECF No.1099).

    A. For the Ongoing Litigation, the stays in each of these matters are hereby lifted and any interested parties shall have thirty (30) days from the date of this Order to appear in one or more of the Ongoing Litigation to assert an interest in such case(s). If no movant comes forward in one or more of the Ongoing Litigation matters within thirty (30) days of this Order, the Monitor shall file dismissals in such case(s).

. . .

    C. For the Outstanding Judgments, any interested party shall have thirty (30) days from the date of this Order to appear before the Court and assert an interest in one or more of the Judgments. If a movant does not appear within such time, Defendants, or any one of them, shall have an additional thirty (30) days in which to take steps to effectuate an assignment of the Outstanding Judgments.

(Second Am. Order 34:1–16, ECF No. 1338).

On October 3, 2021, the Movants appeared in each case of the Ongoing Litigation and filed a Notice of Asserted Interest. (*See* Notice, *McNamara v. Charles Hallinan, et al.*, No. 2:17-cv-02966-GMN-NJK, ECF No. 170); (Notice, *McNamara v. Linda Hallinan, et al.*, No. 2:17-cv-02967-GMN-BNW, ECF No. 170); (Notice, *McNamara v. Patten, et al.*, No. 2:17-cv-02968-GMN-NJK, ECF No. 117); (Notice, *McNamara v. Stealth Power, LLC*, No. 2:18-cv-01813-GMN-DJA, ECF No. 80); (Notice, *McNamara v. Intercept Corp., et al.*, No. 2:18-cv-02281-GMN-VCF, ECF No. 75). Additionally, the Movants filed the present Motion, which asks the Court to "order the Monitor to assign the Outstanding Judgments and the claims underlying the Ongoing Litigation matters to Kim Tucker [or one or more of the Monitorship Entities now under Kim Tucker's control]." (Mot. Assert Interest 9:22–28, ECF No. 1345).[8]

---

[8] Movants did not assert an interest in *McNamara v. Selling Source, LLC et. al.*, No. 2:17-cv-02969-GMN-DJA or the Monitor's Motion to Approve Settlement Agreement with Ward Katz and Related Entities, (ECF No. 1307). Thus, the Monitor voluntarily dismissed *McNamara v. Selling Source* and withdrew the Motion to Approve Settlement Agreement.

## II. DISCUSSION

In their Motion, the Movants attempt to assert an interest in the Ongoing Litigation and Outstanding Judgments by petitioning the Court to assign the Monitor's interest in each case and judgment to Kim Tucker. (Mot. Assert Interest 9:18–28). To support this contention, the Movants explain that Kim Tucker's divorce decree grants her control over the Monitorship Entities and the power to pursue any claims for monies owed to those entities. (*Id.* 3:23–4:5). The Court will discuss the disposition of the Ongoing Litigation and Outstanding Judgments individually below.

### A. Ongoing Litigation

Each case in the Ongoing Litigation was initiated by the Monitor to recover money owed to one of the following Monitorship Entities: BA Services, LLC; Black Creek Capital Corporation; Westfund, LLC; NM Service Corp.; C.B. Service Corporation; and other unidentified Monitorship Entities. The Movants claim that they are "the proper parties to continue the pursuit of [the Ongoing Litigation] matters." (Mot. Assert Interest 3:21). However, the Court finds that the Movants have established neither a valid interest in the Ongoing Litigation, nor standing to continue litigating these cases.

First, as discussed above, the Movants base their interest in the Ongoing Litigation entirely on the divorce decree between Scott Tucker and Kim Tucker, which they claim bestows control of all Monitorship Entities, and the authority to pursue litigation on their behalf, on Kim Tucker. (Mot. Assert Interest 3:23–4:5). However, this divorce decree does not necessarily establish that Kim Tucker has a valid interest in, or power over, the Monitorship Entities at stake in the Ongoing Litigation. For example, the divorce decree provided by the Movants includes only a handwritten declaration signed by Scott Tucker on October 10, 2019, which vaguely states "I Scott Tucker am responsible for all debts incurred during the marriage[.] [A]ll assets obtained during the marriage I grant to Kim Tucker[.]" (Divorce

1  Decree, Ex. C to Movant's Reply, ECF No. 1356-3).  However, this declaration fails to
2  specifically identify any Monitorship Entities, or confirm that each entity was still within the
3  marital estate at the time that Scott Tucker attempted to transfer his assets, or address the effect
4  of the SDNY's criminal money judgment on Scott Tucker's ability to transfer his assets in
5  general.  Additionally, Movants fail to explain how an apparent grant of marital assets to Kim
6  Tucker simultaneously creates the authority to pursue litigation on behalf of the business
7  entities within the Monitorship Estate.  In sum, the divorce decree alone, without consideration
8  of these other issues, does not unequivocally establish that Kim Tucker has unbridled authority
9  over the Monitorship Entities.  The Court, therefore, is not satisfied that Kim Tucker, or any of
10 the other Movants, has a valid interest in the Ongoing Litigation.

11       Further, even if the Movants were able to establish a valid interest, they have not
12 identified any legal authority that would establish Kim Tucker as the proper party to continue
13 pursuing this litigation in place of the Monitor.  The Monitor is a specialized entity, created as
14 an agent of the Court, with the specific purpose of preserving the value of assets in the
15 Monitorship Estate during the pendency of Defendants' appeal, and he initiated the Ongoing
16 Litigation under this mandate.  (*See* Monitor Order, 10:12–16, 12:1–15:22, ECF No. 1099).
17 The Movants have failed to provide any precedent or other case law supporting their claim that
18 they may step into the shoes of the Court-appointed Monitor and pursue the cases that he
19 initiated pursuant to his authority under the Monitor Order.  Therefore, Movants have not
20 demonstrated that they are an adequate substitute for the Monitor in the Ongoing Litigation.

21       Finally, even if the Movants had a valid interest and were proper parties to continue the
22 Ongoing Litigation, they failed to invoke any procedural mechanism or rule that would allow
23 them, as outside third parties, to substitute themselves for the Monitor.  Accordingly, the Court
24 denies the Movant's Motion with respect to the Ongoing Litigation.  Since no party has
25 asserted a valid interest in the Ongoing Litigation, pursuant to this Court's Second Amended

Order, the Monitor shall dismiss the remaining five cases. (*See* Second Am. Order 34:1–16, ECF No. 1338).

### B. Outstanding Judgments

The Monitor obtained four Outstanding Judgments on behalf of the following Monitorship Entities: Black Creek Capital Corporation, Westfund, LLC, and other unidentified Monitorship Entities. (*See supra* n.4). As above, the Movants claim that the Monitor should assign his interest in the Outstanding Judgments to Kim Tucker. (Mot. Assert Interest 9:23–24). However, for the reasons discussed in the prior section, the Court finds that Kim Tucker has not asserted a valid interest in the remaining assets from the Monitorship Estate. Even though no other party has asserted a valid interest in the Outstanding Judgments, pursuant to this Court's Second Amended Order, the Monitor's interest in the Outstanding Judgments remains assignable. (*See* Second Am. Order 34:1–16). Accordingly, the Monitor shall assign his interest in each of the Outstanding Judgments to the Monitorship Entity on whose behalf he was acting when he obtained each judgment.[9]

//
//
//
//
//
//
//

---

[9] Several entities against whom the Outstanding Judgments are entered argue that their judgments are voidable as a result of the Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341, 1352 (2021). (*See* Resp., ECF No. 1349); (Resp., ECF No. 1353). However, only the issuing Court can void a judgment. In the present case, this Court only entered one of the Outstanding Judgments, against the Feingold Parties, (*see* J., ECF No. 1291), and thus, will not consider any arguments concerning voidability from the other three Outstanding Judgments. The Feingold Parties have moved to void the judgment against them, (*see* Mot. Vacate, ECF No. 1341), and the Court will address that Motion by separate Order.

### III. CONCLUSION

**IT IS HEREBY ORDERED** that the Movants' Motion to Assert Interest, (ECF No. 1345), is **DENIED**.

**IT IS FURTHER ORDERED** that Monitor shall file dismissal notices in the remaining open cases of the Ongoing Litigation.

**IT IS FURTHER ORDERED** that the Monitor shall assign his interest in each of the Outstanding Judgments to the entity on whose behalf the Monitor was acting when he pursued each judgment. The Monitor shall file on the docket by January 14, 2022, proof of assignment and proof that the assignee has been notified of the assignment.

**DATED** this __15__ day of December, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT